IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

DANIEL REYES,
    Plaintiff,

-vs-

TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, BRYAN
COLLIER, IN HIS OFFICIAL
CAPACITY AS EXECUTIVE
DIRECTOR;
    Defendants.

CAUSE NO.:
A-16-CA-00954-SS

### ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Texas Department of Criminal Justice (TDCJ) and Bryan Collier's Motion for Summary Judgment [#30], Plaintiff Daniel Reyes' Response [#34] in opposition, Defendants' Reply [#40] in support, and Plaintiff's Sur-Reply [#43] in opposition. Having considered the case file and the applicable law, the Court enters the following opinion and order.

### Background

This is a disability discrimination lawsuit filed by Plaintiff Daniel Reyes against his former employer the TDCJ and its executive director, Bryan Collier. On March 21, 2014, the TDCJ notified Reyes he had been selected for employment as a Correctional Officer at the McConnell Unit in Beeville, Texas. Defs.' App. [#33] at 1. After completing the physical agility test and pre-service training academy, Reyes completed a response form to his conditional offer of employment on April 24, 2014. *Id* at 2. In this form, Reyes confirmed his desire to work as a Correctional Officer with the TDCJ and his ability to perform the essential functions of the position without accommodations. *Id.*

Reyes began on-the-job training on June 2, 2014. Defs.' App. [#37] at 71. During training, on June 6, 2014, Reyes submitted a workplace accommodation request. Pl.'s App. [#33] at 8. Reyes described the essential function for which he sought an accommodation as "the duty of some paperwork." *Id.* He listed his limitations as "mentally reading & spelling wrong due to dyslexia & remembering things." *Id.* As a workplace accommodation, Reyes requested "[i]f I am able to have a mentor a while longer and if I can have a position that will be less difficult but still" remain a Correctional Officer. *Id.* Reyes submitted a medical information form from Xavier Martinez, Ph.D. to corroborate his permanent disabilities first diagnosed on April 23, 2009. *Id.* at 9.

On July 9, 2014, Reyes completed training and began working as a Correctional Officer in the McConnell Unit. *See* Defs.' App. [#37] at 74. Shortly thereafter, on July 21, 2014, the TDCJ recommended Reyes for "administrative separation" based on his request for a workplace accommodation. Pl.'s App. [#33] at 10. The TDCJ's Executive Director approved the administrative separation on July 25, 2014, effectively terminating Reyes' employment. *See id.* at 11.

Reyes contends he was wrongfully terminated in response to his request for a workplace accommodation. In his amended complaint, Reyes alleges TDCJ violated the Texas Labor Code, the Americans with Disabilities Act (ADA), and the Rehabilitation Act of 1973. *See* Am. Compl. [#26]. Reyes seeks job placement in a comparable position, back-pay with prejudgment interest, compensatory damages, and attorney's fees.[1] *Id.* at 14–15. In addition, Reyes seeks

---

[1] Defendants assert they are entitled to Eleventh Amendment immunity for any monetary damages sought under the ADA. Mot. Summ. J. [#30] at 18–19. Reyes concedes Defendants are immune from money damages under the ADA, and therefore Reyes may not seek monetary damages under the ADA in this case. *See* Resp. [#34] at 1.

declaratory and injunctive relief against TDCJ's employment policies PD-14 and PD-24 that served as Defendants' justification for his termination. *Id.*

Defendants have moved for summary judgment on all claims, arguing Reyes' termination was justified and its employment policies comply with applicable laws. *See* Mot. Summ. J. [#30]. Defendants cite Reyes' failure to identify his preexisting, permanent medical condition that impacted his ability to perform essential job functions as justification for his termination. *Id.*

Defendants' motion is fully briefed and ripe for consideration.

## Analysis

### I. Legal Standard—Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent

3

summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

As indicated above, Reyes asserts causes of action under the Texas Labor Code, the ADA, and the Rehabilitation Act of 1973. The parties briefing addresses the claims by category, and therefore the Court will do the same below.

### A. Disparate Treatment and Disparate Impact Claims

Reyes' complaint alleges Defendants use standards, criteria, or methods of administration of their PD-14 and PD-24 policies that have the effect of unlawfully discriminating on the basis

4

of disability, or using qualification standards, employment tests, or other selection criteria that tend to screen out individuals with disabilities, or a class of individuals with disabilities, in violation of the ADA, the Texas Labor Code, and the Rehabilitation Act of 1973. *See* Am. Compl. at ¶¶ 35, 45, 55.

Defendants contend they are entitled to summary judgment because Reyes' disparate impact claims amount to mere conclusory and subjective beliefs that PD-14 and PD-24 were used to terminate his employment.[2] *See* Mot. Summ. J. [#30] at 7. According to Defendants, Reyes does not specify any portion of the policies that are discriminatory or any evidence these policies fall more harshly on disabled individuals. *Id* at 7–8. Defendants also argue PD-14 and PD-24 were implemented to ensure standard practices to accommodate employees with disabilities in addition to protecting the safety and security of employees and offenders. *Id.*

In response, Reyes asserts he has presented a *prima facie* case for his disparate treatment claims. *See* Resp. [#34] at 7–12. Specifically, Reyes argues he is qualified for the Correctional Officer position, and Defendants terminated him for his disability. *Id.*

The Court notes the parties arguments are directed at different legal theories of discrimination: disparate impact and disparate treatment. The two forms of discrimination and the causes of action underlying each are distinct. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003). Thus, the Court will address each theory of discrimination separately.

1. **Disparate treatment**

Disparate treatment is when an employer treats an employee less favorably than others because of a protected characteristic. *Raytheon*, 540 U.S. at 52. To make out a *prima facie*

---

[2] At the end of their brief, Defendants note Section 504 of the Rehabilitation Act of 1973 prohibits discrimination if it occurs solely by reason of the plaintiff's disability. *See* Mot. Summ. J. [#30] at 20. Defendants then incorporate all of their same arguments addressed in this opinion in seeking summary judgment for Reyes' claims under Section 504. Because Defendants rely on the same arguments, the Court will not address the Section 504 claims separately.

5

claim of disparate treatment discrimination, a plaintiff must show (1) he has a disability; (2) he is qualified for the position; (3) he was terminated; and (4) he was treated less favorably than non-disabled employees. *See Crawford v. U.S. Dept. of Homeland Sec.*, 245 F. App'x 369, 380 (5th Cir. 2007). Liability in a disparate-treatment case depends on whether the protected trait actually motivated the employer's decision, which can be proven by either direct or circumstantial evidence. *Id.* at 378.

The Court finds Reyes has presented evidence to support a *prima facie* claim of disparate treatment discrimination. It is undisputed Reyes has a disability and he was terminated from his job with the TDCJ. Defendants, however, contend Reyes is not qualified for the position of Correctional Officer II because he could not work in all areas of the McConnell unit. Mot. Summ. J [#30] at 11–12. Defendants rely on Reyes' request for "a position that will be less difficult" and his deposition testimony in which he stated working in the picket area was "strenuous." *Id.* Reyes has raised a factual dispute as to whether he is qualified for the position of Correctional Officer II.[3] For example, Reyes passed all pre-employment tests and worked as a Correctional Officer II—including in the picket area—without issue before being terminated. Defs.' App. [#37] at 74–83. The TDCJ acknowledged Reyes could have withdrawn his request for a workplace accommodation, and had he done so, he would have been allowed to continue working in his position without an accommodation. *See id.* at 56–57 (Marylan Thomas Dep. Tr. at 28:15-29:12); *id.* at 43 (Marylan Thomas Dep. Tr. at 33:6-35:8). Based on the above evidence, a reasonable jury could conclude Reyes is qualified for the position of Correctional Officer II. A jury could also infer from this evidence that Reyes, as an employee with a

---

[3] The Court finds Defendants' concession with respect to Reyes' failure-to-accommodate claim relevant to this issue. *See* Mot. Summ. J. [#30] at 14 ("For purposes of this motion, TDCJ does not dispute that Reyes was a qualified individual"); *see also* 42 U.S.C.A. § 12111(8) ("The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.").

6

disability who submitted a workplace accommodation, was treated less favorably than non-disabled employees who did not submit the same request and were not terminated.

Because Reyes has proffered evidence to support a *prima facie* claim of disparate treatment discrimination, the burden shifts to Defendants, who "must articulate a legitimate, nondiscriminatory reason" for the adverse employment decision. *Robles v. Texas Tech Univ. Health Scis. Ctr.*, 131 F. Supp. 3d 616, 626 (W.D. Tex. 2015). Defendants have met this burden in arguing Reyes was terminated for failing to follow the TDCJ procedures and instructions by not disclosing his preexisting, permanent medical disability in completing his conditional offer of employment. *See* Mot. Summ. J. [#30] at 8–9, 12.

In light of Defendants' proffered nondiscriminatory reason for terminating Reyes, the burden shifts back to Reyes "to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Williams v. J.B. Hunt Transp., Inc.*, 826 F.3d 806, 811 (5th Cir. 2016). Reyes has presented such evidence in Defendants' changing explanations of the reason for his separation and termination. *See* Defs.' App. [#37] at 86 (describing justification for administrative separation as "Mr. Reyes submitted a request to be placed in a position that does not require completion of paperwork" in July 21, 2014 Recommendation for Administrative Separation); Mot. Summ. J. [#30] at 9 (describing justification for administrative separation as "because he failed to follow TDCJ's procedures and instructions and was not truthful when he signed the conditional offer of employment"); *See* Defs.' App. [#37] at 92 (describing justification for administrative separation as "it did not appear he would be able to perform the duties of a correctional officer with regard to the mental requirements of the position"). In discrimination cases, "an employer's inconsistent explanations for its employment decisions at different times permit[ ] a jury to infer that the employer's proffered reasons are

pretextual." *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 n.11 (5th Cir. 2007); *see also E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 702 (5th Cir. 2014) (indicating "evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case," supports an inference of discrimination at summary judgment).

In sum, the Court finds Reyes has presented evidence to support his disparate treatment discrimination claims, and material factual disputes prevent summary judgment of the same.

### 2. Disparate Impact

Disparate-impact claims involve facially neutral employment practices that fall more harshly on one group than another and cannot be justified by business necessity. *Raytheon Co*, 540 U.S. at 52. To make out a *prima facie* claim of disparate-impact discrimination, a plaintiff must identify the challenged employment policy used by defendants, demonstrate a disparate impact on a protected group, and demonstrate a causal relationship between the identified policy and the disparate impact. *See Gonzales v. City of New Braunfels, Tex.*, 176 F.3d 834, 839, n. 26 (5th Cir. 1999). Statistical evidence is ordinarily required in disparate impact cases. *Wallace v. Magnolia Family Servs, L.L.C.*, 637 F. App'x 786, 789 (5th Cir. 2015).

Defendants contend they are entitled to summary judgment because Reyes has failed to describe a specific neutral practice or policy that falls more harshly on a protected group than on others. Mot. Summ. J. [#30] at 8. The Court agrees Reyes has failed to present evidence of a disparate impact. First, it is unclear from the complaint and briefing what protected group underlies Reyes' claim for disparate-impact discrimination. Reyes' complaint references "qualified employees with disabilities," but his briefing refers to employees "with a preexisting disability." *Compare* Am. Compl. ¶¶ 35, 45, 55, *with* Resp. [#34] at 10. More importantly, there

8

is no evidence of a disparate impact on a protected group. At best, Reyes submits evidence of alleged discrimination against himself and six other correctional officers separated from the TDCJ since 2013. *See* Resp. [#34] at 17. There is no evidence, however, of the total requests for workplace accommodations submitted during this time, the number of requests made by members of the protected group, or statistics on the outcomes of these requests. The evidence here is insufficient to raise a factual issue as to comparative impact on a protected group. *See Wallace*, 637 F. App'x at 789; *see also Crawford*, 245 F. App'x at 381 (5th Cir. 2007) (affirming dismissal of ADA disparate-impact claims because "no valid statistical evidence or analysis regarding the effect" of the challenged policy on disabled individuals).

For these reasons, the Court finds Defendants are entitled to summary judgment on Reyes' disparate-impact discrimination claims.

## B. Failure-to-Accommodate Claims

Reyes alleges Defendants refused to make a reasonable accommodation for his disability, thereby violating the Texas Labor Code, the ADA, and the Rehabilitation Act of 1973. *See* Am. Compl. ¶¶ 34, 44, 54.

To prevail in a failure-to-accommodate claim, a plaintiff must show (1) he is a qualified individual with a disability, (2) the disability was known by his employer; and (3) the employer failed to make reasonable accommodations. *See Feist v. St. of La. Dep't of Justice, office of the Attorney Gen.*, 730 F.3d 450, 454. Reasonable accommodations may include, among other things, job restructuring, part-time or modified work schedules, and reassignment to a vacant position. *See* 42 U.S.C.A. § 12111(9). However, an employer is not obligated to relieve an employee of any essential job functions, modify those duties, or reassign existing or new employees to perform those jobs. *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th

Cir.1999). Whether an accommodation is reasonable is a question of fact. *Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013).

Defendants only dispute whether Reyes' request for a workplace accommodation was reasonable. *See* Mot. Summ. J. [#30] at 14 ("For purposes of this motion, TDCJ does not dispute that Reyes was a qualified individual, or that his limitations were known by TDCJ."). According to Defendants, the request here was not reasonable because it required modifying or relieving Reyes of essential job functions. *Id.* at 15. Reyes counters he did not request relief from or modification of any essential job functions, and the TDCJ caused a breakdown in the required interactive process. Resp. [#34] at 12–14.

The Court concludes summary judgment is not appropriate for Reyes' failure-to-accommodate claims. Reyes requested "[I]f I am able to have a mentor a while longer and if I can have a position that will be less difficult position." Pl.'s App. [#33] at 8. Reyes focuses on the reasonableness of his request for a mentor, while Defendants concentrate on his request for a "less difficult position." Given Defendants' concession that Reyes is a qualified individual and the factual nature of the reasonableness inquiry, a jury could determine a reasonable accommodation would have enabled Reyes to fulfill the essential functions of his job. After all, Reyes, as the employee, "was not required to come up with the solution [to accommodate his disability] . . . on [his] own." *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 622 (5th Cir. 2009); *see also Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996) ("the responsibility for fashioning a reasonable accommodation is shared between the employee and employer").

Setting aside the reasonableness of Reyes' requests, Defendants failed to engage in the required interactive process. "Under the ADA, once the employee presents a request for an

accommodation, the employer is required to engage in the interactive process so that *together* they can determine what reasonable accommodations might be available." *Chevron*, 570 F.3d at 622 (emphasis in original); *see also LHC Group, Inc.*, 773 F.3d at 699. Defendants acknowledge this obligation in their brief, but suggest they were exempt from engaging in the interactive process because "Reyes's request was unreasonable." *See* Mot. Summ. J. [#30] at 15–16. Defendants have not cited any legal basis for an exemption from engaging in the interactive process.[4] To the contrary, the law suggests Defendants should have engaged in such a process before preemptively terminating Reyes. *See Cutrera v. Bd. of Supervisors of La. State. Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("An employer may not stymie the interactive process of identifying a reasonable accommodation for an employee's disability by preemptively terminating the employee before an accommodation can be considered or recommended."). Defendants' failure to engage in the interactive process is itself actionable. *See Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999) (stating "when an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA").

## C. Retaliation Claims

Reyes claims the TDCJ retaliated against him after he requested a reasonable workplace accommodation, in violation of the Texas Labor Code, the ADA, and the Rehabilitation Act of 1973. *See* Am. Compl. ¶¶ 34, 44, 54. Defendants do not challenge Reyes has presented a *prima facie* case of retaliation. Resp. [#30] at 17–18. Instead, Defendants contend they had a legitimate, non-retaliatory reason for their decision that absolves them from liability. *Id.*

---

[4] Defendants may rely on the cited *LHC Group, Inc.* in which the Fifth Circuit stated the "proposed solutions were not so unreasonable that they absolved [the employer] of its statutory duty to at least discuss accommodation." Mot. Summ. J. [#30] at 16 (citing *LHC Group, Inc.*, 773 F.3d at 699). Even assuming this decision permits an employer to skip the interactive process when a request for accommodation is "so unreasonable," the Court is not convinced such a situation exists in this case.

Once an employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. *Feist*, 730 F.3d at 454. After the employer provides a legitimate, non-retaliatory reason, the burden shifts back to the employee to demonstrate that the employer's reason is pretext for retaliation. *Id.* The employee may meet this shifting burden by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive. *Id.*

The Court finds Reyes has presented evidence of but-for causation that prevents summary judgment on his retaliation claims. As stated above, the TDCJ acknowledged Reyes could have withdrawn his request for a workplace accommodation, and had he done so, he would have been allowed to continue working in his position without an accommodation. *See id.* at 43, 56–57. From this evidence, a reasonable jury could conclude Reyes would not have been separated or terminated but for his request for a workplace accommodation. Thus, a factual dispute precludes summary judgment of Reyes' retaliation claims.

## Conclusion

Defendants are entitled to summary judgment on the disparate-impact discrimination claims, but all other claims involve genuine disputes of material facts that render summary judgment inappropriate. Accordingly:

IT IS ORDERED that Defendants TDCJ and Bryan Collier's Motion for Summary Judgment [#30] is GRANTED in part and DENIED in part in accordance with this opinion.

SIGNED this the 31st day of October 2017.

*Sam Sparks*
SAM SPARKS
UNITED STATES DISTRICT JUDGE